2:10 MJ 29

LMN:AAS
F.#2009R02129
OCDETF#NY-NYE-628

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

GLASFORD O'BRIEN DAVIS,
    also known as
    "Mike Glass,"
    "David Dele" and
    "Eric Wilson," ███████,

OSCAR GASTELUM,
    also known as
    "Mailman,"

███████████████

MARTIN TERRAN

           Defendants.

- - - - - - - - - - - - - - - - -X

FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANTS

(T. 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

    MATTHEW M. RAMARGE, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

    Upon information and belief, on or about and between December 1, 2009 to January 23, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GLASFORD O'BRIEN DAVIS, also known as "Mike Glass," "David Dele" and "Eric Wilson," ███████

███████████, OSCAR GASTELUM, also known as "Mailman," ██████ ████████████████████████ and MARTIN TERRAN, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(A); Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. Since October 2009, the DEA has been conducting an investigation of an international drug trafficking organization that operates in Brooklyn, New York, Atlanta, Georgia, Greensboro, North Carolina, Houston, Texas and Richmond, Virginia, among other places. DEA agents have determined that a number of the targets of the investigation use "trap vehicles" to transport drugs into and out of the New York metropolitan area.

2. This investigation has used confidential sources, judicially-authorized wiretaps, and other investigative techniques.

---

[1] Because the purpose of this affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

3. Since October 2009, agents have been conducting court-authorized wiretaps of a phone used by defendant GLASFORD O'BRIEN DAVIS, also known as "Mike Glass," "David Dele" and "Eric Wilson." Specifically, on October 16, 2009, United States District Judge Nicholas G. Garaufis signed an order authorizing the interception of electronic communications over the wireless telephone assigned telephone number 304-741-7147, bearing IMSI number 316010112018306 with no subscriber information (the "7147 Telephone"). On November 20, 2009, United States District Judge Sterling Johnson, Jr. signed an order authorizing the continued interception of electronic communications over the 7147 Telephone. On December 18, 2009, United States District Judge Eric N. Vitaliano signed an order authorizing the continued interception of electronic communications over the 7147 Telephone. On January 15, 2010, United States District Judge Sterling Johnson, Jr. signed an order authorizing the continued interception of electronic communications over the 7147 Telephone.

4. Based on intercepted communications and surveillance, among other things, agents learned about the coordination of a large-scale cocaine transaction. Specifically, during December 2009 and January 2010, the defendants GASTELUM, GLASFORD O'BRIEN DAVIS, ███████████████ and ███ communicated repeatedly over the 7147 Telephone to coordinate a

3

transaction involving multiple kilograms of cocaine in the vicinity of Norfolk, Virginia during the week of January 18, 2010.[2/]

5. For example, on January 10, 2010, GLASFORD O'BRIEN DAVIS, who was using the 7147 Telephone, received a call from ▓▓▓▓▓▓, who was using the telephone number 631-839-3871 (the "3871 Telephone") (call # 5681). During the telephone conversation, GLASFORD O'BRIEN DAVIS asked ▓▓▓▓▓▓, "what if I get them to come up to you." In response, ▓▓▓▓▓▓ stated, "I will take care of you." When asked whether he could "blow through them," ▓▓▓▓▓▓ responded that he had "mad mother fuckers who will buy them but they have to be a decent price."[3/]

6. Based on my training, experience, and knowledge of this investigation, I believe that, in this conversation, GLASFORD O'BRIEN DAVIS and ▓▓▓▓▓▓ discussed whether ▓▓▓▓▓▓ could assist GLASFORD O'BRIEN DAVIS in reselling any of the cocaine from the planned transaction ("what if I get them to come up to you.") ("I will take care of you."). Notably, the investigation has revealed that ▓▓▓▓▓▓

---

[2/] At this time, agents do not believe that GLASFORD O'BRIEN DAVIS and ▓▓▓▓▓▓ are related.

[3/] Some of these summaries were prepared, in part, from the rough translations of Patois into English by the monitors. The intercepted conversations include a mixture of English and Patois.

4

is a narcotics distributor who operates in the Eastern District of New York (see paragraphs 17-20). I further believe that ▇▇▇▇▇▇ stated that he had clients located in the Eastern District of New York who would buy the cocaine ("blow through them") ("mad mother fuckers who will buy them but they have to be a decent price").

7. On January 13, 2010, GLASFORD O'BRIEN DAVIS made a call on the 7147 Telephone to ▇▇▇▇ at telephone number 202-420-6707 (the "6707 Telephone") (call # 5945). During the call, GLASFORD O'BRIEN DAVIS stated that he was "working on something huge for next weekend." GLASFORD O'BRIEN DAVIS further stated that "my people" would be arriving the following weekend and that he needed ▇▇▇▇ to "find a place to park a thing." In response, ▇▇▇▇ told GLASFORD O'BRIEN DAVIS not to worry and that he "got a spot." Additionally, GLASFORD O'BRIEN DAVIS stated that he would "come probably like three days before they come."

8. Based on my training, experience, and knowledge of this investigation, I believe that, in this call, GLASFORD O'BRIEN DAVIS and ▇▇▇▇ discussed the forthcoming cocaine transaction ("working on something huge for next weekend") ("my people"). I further believe that GLASFORD O'BRIEN DAVIS asked ▇▇▇▇ to find a place for GASTELUM to park a truck loaded with cocaine ("find a place to park a thing") ("got a spot"). I further believe that GLASFORD O'BRIEN DAVIS stated that he would

5

arrive in the Norfolk, Virginia area three days before his suppliers ("come probably like three days before they come") (see paragraphs 14-15, 20).

9. On January 14, 2010, GLASFORD O'BRIEN DAVIS, using the 7147 Telephone, called ▮▮▮▮ at the 6707 Telephone (call # 5998). During the call, GLASFORD O'BRIEN DAVIS stated, "probably next week or the weekend" and that "the time is what is going to mess me up." When asked how much they would "blow through in a week," ▮▮▮▮ responded, "If it is like that, it is done." When asked, "what if they come with a 3-0," ▮▮▮▮ stated, "We may be able to 8 or 9 a week."

10. Based on my training, experience, and knowledge of this investigation, I believe that, in this call, GLASFORD O'BRIEN DAVIS and ▮▮▮▮ discussed that the cocaine transaction would occur in the near future ("probably next week or the weekend"). I further believe that GLASFORD O'BRIEN DAVIS stated that, given the volume of the drugs, it would be difficult to sell everything quickly ("the time is what is going to mess me up"). I further believe that GLASFORD O'BRIEN DAVIS and ▮▮▮▮ discussed how many kilograms of cocaine they could sell in a week ("blow through in a week") ("If it is like that, it is done.") ("what if they come with a 3-0") ("We may be able to 8 or 9 a week.").

6

11. On January 15, 2010, GASTELUM made a call on telephone number (520) 258-1343 (the "1343 Telephone") to GLASFORD O'BRIEN DAVIS, who was using the 7147 Telephone (call # 6013). During the call, GASTELUM stated "everything is going fine" and that he was "waiting on another five to come today" to be "leaving with about 20." GLASFORD O'BRIEN DAVIS told GASTELUM to give him "three days."

12. Based on my training, experience, and knowledge of this investigation, I believe that, in this call, GASTELUM and GLASFORD O'BRIEN DAVIS discussed the pending cocaine transaction that would take place during the week of January 18, 2010 ("everything is going fine"). I further believe that GASTELUM stated that he had received five kilograms of cocaine ("waiting on another five to come today") and would be departing for the meeting location with twenty kilograms of cocaine ("leaving with about 20"). I further believe that GLASFORD O'BRIEN DAVIS instructed GASTELUM to give him three days' notice before GASTELUM's arrival at the meeting location ("three days").

13. On January 19, 2010, GASTELUM made a call on the 1343 Telephone to GLASFORD O'BRIEN DAVIS, who was using the 7147 Telephone (call # 6322). During the telephone conversation, when asked if it was "Norfolk International," GLASFORD O'BRIEN DAVIS responded affirmatively. GLASFORD O'BRIEN DAVIS stated that, if GASTELUM did not have a credit card, he could "pay at the

7

airport." GLASFORD O'BRIEN DAVIS also stated that "they are going to search you thoroughly because you are buying your ticket today." GASTELUM responded that it was "not a problem because we have nothing on us."

14. Based on my training, experience, and knowledge of the investigation, I believe that, in this conversation, GASTELUM and GLASFORD O'BRIEN DAVIS discussed arrangements for GASTELUM to arrive in Virginia ("Norfolk International") ("pay at the airport"). I further believe that GLASFORD O'BRIEN DAVIS instructed GASTELUM not to bring any narcotics with him onto the plane ("they are going to search you thoroughly because you are buying your ticket today") and GASTELUM stated that he and TERRAN would not carry any narcotics with them ("not a problem because we have nothing on us").

15. Also on January 19, 2010, GLASFORD O'BRIEN DAVIS, who was using the 7147 Telephone, called ▆▆▆▆▆▆▆▆▆▆▆ at the 3871 Telephone (call # 6325). During the telephone conversation, ▆▆▆▆▆▆▆▆▆▆▆ stated that he "might be able to do the whole thing" and that he "need the shit back because I really don't have it." ▆▆▆▆▆▆▆▆▆▆▆ also stated that he was going to "send it Western Union."

16. Based on my training, experience, and knowledge of this investigation, I believe that, in this conversation, ▆▆▆▆▆▆ ▆▆▆▆▆ agreed to finance the cocaine transaction with

8

GASTELUM ("might be able to do the whole thing") ("need the shit back because I really don't have it") and to send the necessary funds to GLASFORD O'BRIEN DAVIS through a wire transfer ("send it Western Union").

17. Approximately two hours later, GLASFORD O'BRIEN DAVIS, who was using the 7147 Telephone, called ▓▓▓▓▓▓ at the 3871 Telephone (call # 6346). During the call, GLASFORD O'BRIEN DAVIS asked "what name you sent it from if it is your name." ▓▓▓▓▓▓ responded affirmatively. When asked if he had "sent it to V," ▓▓▓▓▓▓ responded affirmatively.

18. Based on my training, experience, and knowledge of this investigation, I believe that, in this telephone conversation, ▓▓▓▓▓▓ confirmed that he had wired money in his own name to GLASFORD O'BRIEN DAVIS for the purchase of cocaine ("what name you sent it from if it is in your name") and that he had sent the money to Virginia ("sent it to V").

19. On January 20, 2010, GLASFORD O'BRIEN DAVIS, who was using the 7147 Telephone, received a call from ▓▓▓▓▓▓ at the 3871 Telephone (call # 6454). During the telephone conversation, GLASFORD O'BRIEN DAVIS stated, "It's a good thing you were able to send me that money or I would be in a spot."

20. Based on my training, experience, and knowledge of this investigation, I believe that, in this telephone

9

conversation, GLASFORD O'BRIEN DAVIS confirmed that he had received money from ▆▆▆▆▆▆▆▆▆▆ to purchase cocaine from GASTELUM.

21. On January 20, 2010 at approximately 9 a.m., agents observed GLASFORD O'BRIEN DAVIS meet GASTELUM and TERRAN at the Norfolk International Airport. Agents confirmed that GASTELUM and TERRAN had flown on a Delta flight originating from Phoenix, Arizona. These three defendants entered a champagne Chevrolet Malibu. Agents followed the car to Ocean Key Resort in Virginia Beach, Virginia. The three defendants entered the premises. Approximately one hour later, GLASFORD O'BRIEN DAVIS exited the premises.

22. On January 20, 2010 at approximately 10 p.m., GLASFORD O'BRIEN DAVIS, using the 7147 Telephone, called ▆▆▆ at the 6707 Telephone (call # 6490). During the call, GLASFORD O'BRIEN DAVIS stated, "they are saying it is kind of dark right now so they say when it gets bright." GLASFORD O'BRIEN DAVIS further stated, "everything remains the same that we spoke about."

23. Based on my training, experience, and knowledge of this investigation, I believe that, in this call, GLASFORD O'BRIEN DAVIS informed ▆▆▆ that the cocaine transaction would take place the following day ("they are saying it is kind of dark right now so they say when it gets bright") and that the terms of

10

the transaction remained the same ("everything remains the same that we spoke about").

24. On January 21, 2010 at approximately 9:25 a.m., GLASFORD O'BRIEN DAVIS, using the 7147 Telephone, called ▓▓▓ at the 6707 Telephone (call # 6516). During the call, GLASFORD O'BRIEN DAVIS stated, "they are still resting." When asked by ▓▓▓ whether "they are still sleeping," GLASFORD O'BRIEN DAVIS responded affirmatively. ▓▓▓ also stated, "The motherfuckers are hitting me up like crazy."

25. Based on my training, experience, and knowledge of this investigation, I believe that, in this call, GLASFORD O'BRIEN DAVIS informed ▓▓▓ that, because GASTELUM and TERRAN were still asleep, the cocaine transaction would occur later in the day ("they are still sleeping"). I further believe that ▓▓▓ stated that his clients were anxious to purchase GLASFORD O'BRIEN DAVIS' cocaine ("The motherfuckers are hitting me up like crazy.").

26. Approximately one hour later, GLASFORD O'BRIEN DAVIS, using the 7147 Telephone, received a call from ▓▓▓ at the 6707 Telephone (call # 6522). During the call, ▓▓▓ asked GLASFORD O'BRIEN DAVIS to "call me when you are ready." In response, GLASFORD O'BRIEN DAVIS stated that he would be ready at "about thirty."

27. Based on my training, experience, and knowledge of this investigation, I believe that, in this call, GLASFORD O'BRIEN DAVIS informed ▓▓▓ that DAVIS, GASTELUM, and TERRAN would be leaving in approximately 30 minutes ("call me when you are ready") ("about thirty").

28. At approximately 10:30 a.m., agents observed the defendants GLASFORD O'BRIEN DAVIS, GASTELUM, and TERRAN depart the Ocean Key Resort. These three defendants were seen entering a red Hyundai Sonata. Agents performing surveillance observed the red Huyndai perform repeated counter-surveillance measures, including repeated u-turns, as well as frequent entering and exiting of highways.

29. At approximately 11:35 a.m., agents observed the red Hyundai park on the street, several blocks away from 7040 University Drive, Norfolk, Virginia, which public records reflect as ▓▓▓ residence (the "▓▓▓ Residence"). Moments later, agents observed the red Hyundai continue to drive, while being followed by a white BMW X5 SUV, registered to and driven by an unnamed co-conspirator ("CC").

30. At approximately 11:40 a.m., agents observed the red Hyundai pick up ▓▓▓ several blocks away from the ▓▓▓ Residence. Approximately three minutes later, the red Hyundai and the white BMW arrived in front of the ▓▓▓ Residence The white BMW and the red Hyundai parked in the driveway next to the

12

███ Residence. Thereafter, ███ GLASFORD O'BRIEN DAVIS, GASTELUM, TERRAN, and CC were observed entering the ███ Residence.

31. At approximately 12:32 p.m., agents observed CC, GASTELUM, and TERRAN depart the ███ Residence and leave together in the white BMW. Approximately ten minutes later, agents observed GLASFORD O'BRIEN DAVIS depart the ███ Residence and leave in the red Hyundai. Approximately three minutes later, agents observed ███ depart the ███ Residence and leave in a silver car.

32. Based on my training, experience, and knowledge of the investigation, I believe that ███, GLASFORD O'BRIEN DAVIS, GASTELUM, CC, and TERRAN met inside the ███ Residence to finalize negotiations for the cocaine transaction.

33. Approximately one hour later, GLASFORD O'BRIEN DAVIS, using the 7147 Telephone, called ███ at the 3871 Telephone (call # 6537). During the call, GLASFORD O'BRIEN DAVIS stated, "I just finish putting something together because the Mailman got here and then they got here and I just grabbed it." When asked whether he had "looked at the picture," GLASFORD O'BRIEN DAVIS responded affirmatively. When asked whether he had "seen the Luger" and if "that shit is A-1," GLASFORD O'BRIEN DAVIS responded, "just like they said it would be." When asked

13

if GLASFORD O'BRIEN DAVIS were in "New York it would be happening," ▮▮▮▮ responded, "word."

    34. Based on my training, experience, and knowledge of this investigation, I believe that, in this call, GLASFORD O'BRIEN DAVIS stated that he had finalized negotiations for the cocaine with GASTELUM, CC, and TERRAN ("I just finish putting something together because the Mailman got here and then they got here and I just grabbed it."). I further believe that GLASFORD O'BRIEN DAVIS and ▮▮▮▮ discussed the quality of a drug sample DAVIS received from CC, GASTELUM, and TERRAN ("looked at the picture") ("seen the Luger") ("that shit is A-1") ("just like they said it would be"). I further believe that ▮▮▮▮ and GLASFORD O'BRIEN DAVIS discussed the market for these drugs in New York ("New York it would be happening") ("word").

    35. Approximately one hour later, GLASFORD O'BRIEN DAVIS, using the 7147 Telephone, again called ▮▮▮▮ at the 3871 Telephone (call # 6542). During the call, GLASFORD O'BRIEN DAVIS stated that he was "ready to sign the papers" and that he was "trying to figure out how to come." ▮▮▮▮ stated, "if you came in five minutes or something . . . the shit will go quicker."

    36. Based on my training, experience, and knowledge of the investigation, I believe that, in this call, GLASFORD O'BRIEN

14

DAVIS stated that negotiations were concluding with GASTELUM, CC, and TERRAN ("ready to sign the papers"). I further believe that GLASFORD O'BRIEN DAVIS stated that he was ready to meet ▓▓▓▓ ▓▓▓▓▓▓▓ in New York ("trying to figure out how to come") and that ▓▓▓▓▓▓▓▓ stated that he could quickly sell 5 kilograms or less of cocaine that GLASFORD O'BRIEN DAVIS received from GASTELUM, CC, and TERRAN ("if you came in five minutes or something . . . the shit will go quicker").

37. During the early morning of January 22, 2010, at the Ocean Key Resort, agents, who were occupying an adjacent room to that occupied by GASTELUM and TERRAN pursuant to the investigation, overheard some conversation from GASTELUM and TERRAN's room, through the wall. Among the voices coming through the wall, agents recognized the voice of GLASFORD O'BRIEN DAVIS. Specifically, agents heard a male individual state, in sum and substance "Here's how we're going to do it." Agents also heard the words "30, 32."

38. Based on my training, experience, and knowledge of the investigation, I believe that GASTELUM and TERRAN were negotiating a cocaine transaction with GLASFORD O'BRIEN DAVIS ("Here's how we're going to do it."). I further believe that DAVIS stated that he could sell a kilogram of cocaine for $30,000 or $32,000 ("30, 32").

15

39. At approximately 12:40 p.m. on January 22, 2010, agents observed CC check out of a Holiday Inn room in Virginia Beach, Virginia. With the consent of the hotel, agents searched the room where CC had stayed. In the trash, agents recovered the following: (1) a computer printout of directions from Tucson, Arizona to Virginia Beach, Virginia; and (2) torn-up handwritten notes on hotel stationary describing, in sum and substance, how to open a trap compartment located in a car.

40. At approximately 6:50 p.m. on the same date, agents located the white BMW X5 SUV in the parking lot of Candlewood Suites in Norfolk, Virginia. After locating the vehicle, "Kila," "Buro," and "Debo," three trained narcotics canines from the Virginia State Police (the "VSP"), gave positive alerts to the BMW, indicating that the BMW contained a controlled substance or the residue of a controlled substance.[4] After

---

[4] I am informed by State Trooper Chris Murphy that "Kila," "Buro," and "Debo" were acquired by the VSP in December 2009, July 2009, and 2008 after having completed basic courses of instruction in controlled substances detection at the Virginia State Police Academy. Additionally, "Kila" and "Buro" were previously trained by the Immigration and Customs Enforcement. Since the times of their acquisition, "Kila," "Buro," and "Debo" have regularly served the VSP as K-9 Narcotics Detecting Dogs, receive continuous training, and are utilized regularly for the purpose of detecting controlled substance odors. I am further informed that "Kila," "Buro," and "Debo" are routinely used to conduct searches of automobiles, packages, and suitcases. "Kila," "Buro," and "Debo" will positively alert their handlers to the presence of the odor of marijuana, hashish, cocaine, heroin and methamphetamine and their derivatives. "Kila," "Buro," and "Debo" have made positive indications on narcotics in the field, including cocaine, hashish, heroin and marijuana.

16

obtaining written consent from CC, who was in a room at Candlewood Suites, agents searched the BMW and located three trap compartments in the vehicle, one of which matched the description of the trap found in CC's prior hotel room at the Holiday Inn.

41. At approximately the same time, agents arrested GLASFORD O'BRIEN DAVIS, GASTELUM, and TERRAN as they attempted to meet in the vicinity of the Oceans Key Resort. At the time of their arrest, DAVIS was in possession of an undetermined amount of United States currency, estimated at approximately $30,000; GASTELUM was in possession of an undetermined amount of United States currency, estimated at approximately $5,000; and TERRAN was in possession of two small plastic bags containing a substance that, based on my training, experience, and knowledge of this investigation, appeared to be cocaine.

42. Based on my training, experience, and knowledge of this investigation, GLASFORD O'BRIEN DAVIS, GASTELUM, and TERRAN were in the process of meeting to conduct a cocaine transaction.

---

"Kila," "Buro," and "Debo" alert after detecting the scent of controlled substances. The alerts for "Buro" and "Kila" consist of sitting, whereas the alert for "Debo" consists of scratching and barking. Therefore, there was probable cause to believe that "Kila," "Buro," and "Debo" are reliable and that the BMW contained a controlled substance or its residue.

17

WHEREFORE, your deponent respectfully requests that the defendants GLASFORD O'BRIEN DAVIS, also known as "Mike Glass," "David Dele" and "Eric Wilson," ███████████ OSCAR GASTELUM, also known as "Mailman," ███████ also known as ████ and MARTIN TERRAN, be dealt with according to law.

                                                      _____
                                                     MATTHEW M. RAMARGE
                                                     Special Agent
                                                     Drug Enforcement Administration

Sworn to before me this
_____ of January, 2010

_____
E. THOMAS BOYLE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK